# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Jody L. Forney, | : | Case No. 3:11-CV-778 |
| Plaintiff, | : | Magistrate Judge<br>Vernelis K. Armstrong |
| v. | : | |
| Capitol Indemnity Corporation, | : | MEMORANDUM, OPINION & ORDER |
| Defendant and<br>Third Party Plaintiff, | : | |
| | : | |
| v. | : | |
| Lakeside Mortgage, Inc. et al., | : | |
| Third Party Defendants. | : | |
| | : | |

This cause is presently before this Court on the Motion for Summary Judgment of Third Party Defendants John and Melissa Gremm.  The parties consented to the undersigned conducting all proceedings and entering judgment pursuant to 28 U.S.C. § 636(c) and

1

Fed.R.Civ.P. 73.

## I. Jurisdiction

This cause comes to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 after removal from the Court of Common Pleas, Erie County, Ohio.

Plaintiff Forney is a resident of Erie County, Ohio. Defendant Capitol Indemnity Corporation [CIC] is a Wisconsin corporation with its principal place of business in Madison, Wisconsin. Complete diversity exists between Plaintiff and CIC. The amount in controversy in this action is in excess of $75,000.00, exclusive of interest and costs. Accordingly, this case involves a controversy over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

## II. Parties

Plaintiff Jody L. Forney is an individual person, who entered into a mortgage arrangement with Lakeside Mortgage, Inc.

Defendant/Third Party Plaintiff Capitol Indemnity Corporation is a bonding/surety company that, inter alia, provides bond guarantees for mortgage providers.

Third Party Defendant Lakeside Mortgage, Inc., is or was a mortgage company licensed to provide mortgages in the State of Ohio and was a signatory to an indemnity agreement with CIC.

Third Party Defendant Charles Brinkman is or was a shareholder in Lakeside and was a signatory to the indemnity agreement with CIC.

Third Party Defendant D. Johanna Brinkman was the spouse of Charles Brnkman at the time Charles Brinkman entered into the indemnity agreement with CIC and was also a signatory

to the indemnity agreement with CIC

Third Party Defendant Michael A. DiPaolo is or was a shareholder in Lakeside and was a signatory to the indemnity agreement with CIC

Third Party Defendant Ann-Marie DiPaolo was the spouse of Michael A. DiPaolo at the time Michael A. DiPaolo entered into the indemnity agreement with CIC and was also a signatory to the indemnity agreement with CIC.

Third Party Defendant John M. Gremm is or was a shareholder in Lakeside and was a signatory to the indemnity agreement with CIC

Third Party Defendant Melissa M. Gremm was the spouse of John M. Gremm at the time John M. Gremm entered into the indemnity agreement with CIC and was also a signatory to the indemnity agreement with CIC.

**III. Procedural History**

On or about March 26, 2007, Plaintiff Jody L. Forney, filed a Complaint in the Court of Common Pleas, Erie County, Ohio, in an action captioned <u>Jody L. Forney v. Lakeside Mortgage, Inc., et al.</u>, (Third Party Defendant in the instant case), case no. 2007-CV-0273, alleging fraud, breach of fiduciary duty and violation of §§ 1322.07 and 1322.071 of the Ohio Revised Code. Defendant Lakeside failed to answer or defend as to Plaintiff's Complaint, and on or about May 23, 2008 the Erie County Court of Common Pleas granted a default judgment in favor of Plaintiff. On or about September 11, 2008, subsequent to a damages hearing, the Erie County Court of Common Pleas awarded Plaintiff damages in the amount of $78,207.85 plus 8% interest from May 23, 2008.

On March 16, 2011, Plaintiff Forney filed another Complaint in the Erie County Court of

Common Pleas, case no. 2011-CV-0202, against Capitol Insurance Companies (Defendant and Third Party Plaintiff in the instant case) pursuant to Ohio Revised Code § 3926.06, as a supplemental action seeking enforcement - as against Defendant CIC, as the insurer of judgment debtor Lakeside - of the May 23, 2008 default judgment against Lakeside.

On April 20, 2011, CIC filed a Notice of Removal, pursuant to 28 U.S.C. §§ 1441, 1446 and 1332, to have Erie County Court of Common Pleas case no. 2011-CV-0202 removed to the United States District Court for the Northern District of Ohio.

On May 20, 2011, Defendant CIC filed an Answer to Plaintiff Forney's Complaint.

On May 25, 2011, District Judge Jack Zouhary issued a Minute Order of a Status Conference of that date that, pursuant to consent of parties, this case be transferred to the undersigned for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

On June 3, 2011, Plaintiff filed a First Amended Complaint.

Also on June 3, 2011, Defendant, Third Party Plaintiff, CIC, filed a Third Party Complaint against Third Party Defendants Lakeside Mortgage, Inc., Charles Brinkman, D. Johanna Brinkman, Michael A. DiPaolo, Ann-Marie DiPaolo, John M. Gremm and Melissa M. Gremm.

On June 17, 2011, Defendant CIC filed an Answer to Plaintiff's First Amended Complaint.

On August 5, 2011, Third Party Defendants Michael A. DiPaolo and Ann-Marie DiPaolo filed their Answer to the Third Party Complaint. On December 15, 2011 Third Party Defendants Charles Brinkman and D. Johanna Brinkman filed their Answer to the Third Party Complaint.

On August 23, 2011, Third Party Defendants John M. Gremm and Melissa M. Gremm filed a response to CIC's Third Party Complaint in the form of a Motion for Summary Judgment. On September 29, 2011 Third Party Plaintiff, CIC, filed an Opposition to the Motion for Summary Judgment. On October 18, 2011 Third Party Defendants John and Melissa Gremm filed a Reply Brief in Support of their Motion for Summary Judgment.

This case is presently before this Court on the matters raised in Third Party Defendants John and Melissa Gremm's Motion for Summary Judgment.

### IV. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. [...] The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

5

The standard of review on summary judgment motions is that, to determine whether a genuine issue of material fact exists, evidence shall be construed in a light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); see also White v. Turfway Park Racing Ass'n., 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" where its resolution affects the outcome of a case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 , 248 (1986)

Summary judgment is appropriate only when it is clear that the non-moving party would be unable to establish the existence of an essential element of that party's case and where the non-movant bears the burden of proof on said issue at trial. Celotex Corp. v. Catrett, 477 U.S. 317, at 322 (1986).

The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).

Where the movant has established the prima facie argument that there is no genuine issue of material fact, the burden will transfer to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 250,

6

(quoting Fed. R. Civ. P. 56(e))

      The trial court "no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1034, 274 U.S. App. D.C. 340 (D.C. Cir. 1988)).  The non-moving party bears a duty to point to specific facts in the record, which create a genuine issue of material fact.  Fulson v. Columbus, 801 F.Supp. 1, 4 (S.D. Ohio 1992).  However, the non-movant must establish that there is more than a mere scintilla of evidence to withstand summary judgment.  That is, it is not enough for the non-movant to show only that there is a mere abstraction or metaphysical doubt as to the material facts in question. Id.

      As to the issue presented by the moving party in support of summary judgment, the question for the Court is whether the record before the it presents genuine questions of fact upon which a reasonable jury could reach varying conclusions.  If the answer to this question is "Yes," then summary judgment is not appropriate.

**V. Relevant Facts and Issue in Dispute on Summary Judgement**

      Third Party Defendant John M. Gremm Third Party Defendant Melissa M. Gremm move for Summary Judgment as to the claims asserted against them by Third Party Plaintiff CIC.

**Relevant Facts**

      Beginning at least as early as August, 2001, John M. Gremm was a shareholder in Lakeside Mortgage.  On August 22, 2001, Lakeside, John M. Gremm and other Lakeside shareholders and their spouses signed an indemnification contract with CIC.  Melissa M. Gremm was the spouse of John Gremm on August 22, 2001.  On August 22, 2001, Melissa Gremm also

signed the same indemnification contract with CIC that her husband John Gremm had signed. On or about February 27, 2003, Plaintiff Jody L. Forney entered into a mortgage transaction with Lakeside. On or about March 26, 2007, Forney filed her original Complaint against Lakeside in the Erie County Court of Common Pleas Complaint. The minutes of a January 4, 2005 board meeting of Lakeside Mortgage, Inc. indicate that two other shareholders of Lakeside, Charles Brinkman and Michael A. DiPaolo had agreed to purchase back from John Gremm all his stock in Lakeside Mortgage. The minutes further stated that the amount of the purchase was to be based on negotiations between parties, but was to be completed by no later than November 1, 2005.

### Issues in Dispute

Viewed from the perspective of summary judgment, the central feature of Third Party Plaintiff CIC's Complaint against Third Party Defendants John and Melissa Gremm is that the Gremms, as signatories to an indemnification agreement between Lakeside and CIC, were and are contractually obliged to indemnify CIC, the bonding surety of Lakeside Mortgage, Inc, as to any losses sustained by CIC arising out of its surety contract with Lakeside.

The basis of the Gremms' Motion for Summary Judgement, is that they are not obligated, as former indemnitors to CIC, for any losses that CIC has incurred or may incur related to or arising out of Plaintiff Forney's default judgment enforcement action against CIC because the Gremms had terminated their ownership interest in Lakeside and, thus, their obligation to indemnify CIC ended before Forney had filed her original cause of action against Lakeside.

### Discussion

Stated at its simplest, for movants, Third Party Defendants, Gremms to prevail in their

Motion for Summary Judgment they must establish that there is no genuine issue of material fact on the question of whether they were obligated as indemnitors to CIC a the time that CIC sustained a loss or anticipated the possibility of sustaining a loss with respect to the mortgage arrangement between Plaintiff Forney and Third Party Defendant Lakeside.  Stated otherwise, for the Gremms to prevail they must show that no reasonable trier of fact could conceivably construe the evidence in a way that would show that the Gremms were indemnitors to CIC at the time that CIC sustained a loss or reasonably anticipated they might sustain a loss with respect to the  mortgage arrangement between Plaintiff Forney and Third Party Defendant Lakeside.

As developed thus far, the record in this case alleges the following facts:

> 1.  On August 22, 2001, John M. Gremm and his spouse Melissa M. Gremm, with other individuals and Lakeside Mortgage, Inc., signed a Capitol Indemnity Corporation Short Form General Indemnity Agreement [GIA].
>
> 2.  The GIA states, regarding signature instructions, "Corporation of LLC -  If corporate officer or LLC member or manager signs indicating his or her LLC capacity it is nonetheless specifically understood that such individual is signing in his or her corporate or LLC capacity and as an individually liable indemnitor.  If married, a spouse must also sign."
>
> 3.  Paragraph 1. of the GIA states, "Bond means (1) any surety bond . . . or other express or implied obligation of guaranty or suretyship, signed or committed to by CIC at the request of Principal, [Lakeside] or any of the indemnitors . . . on, before. or after the date of this agreement pursuant to which CIC is or may be made liable for Loss . . ."
>
> 4.  Paragraph 1 of the GIA also states, "Loss means any payment or expense either incurred or anticipated by CIC in connection with any Bond or this agreement, including but not limited to, payment of bond proceeds or any other expenses in connection with claims, potential claims . . ."
>
> 5.   Paragraph 2 of the GIA states, "I, individually, and jointly and

9

severally with Principal and all other indemnitors, agree to hold CIC harmless from all Loss and to pay back or reimburse CIC for all loss."

6. Paragraph 5 of the GIA states, "This agreement will apply to any bonds or bonding line established for the principal, and any increase thereof."

7. Minutes of the a January 4, 2005 board meeting of Lakeside Mortgage, Inc. indicate that Brinkman and DiPaolo had agreed to purchase back from John Gremm all his stock in Lakeside Mortgage. The minutes further state that "[t]he amount of the purchase is based on negotiation between the parties, but is to be completed no later than November 1, 2005."

8. On June 10, 2006, Gregory S. King of King Insurance Agency, Inc., an agent of CIC, sent a letter to Charles Brinkman and Michael DiPaolo stating that he had received a copy of Lakeside's corporate minutes that indicated that Brinkman and DiPaolo had purchased John Gremm's interest in Lakeside Mortgage, Inc. This letter also advised Brinkman and DiPaolo that King had notified the surety, CIC, of this change in ownership and that CIC"s underwriter had advised King that the change in ownership was acceptable to it and that no further action would be needed at that time.

9. On June 10, 2006, King sent an email to Dalia Dannenberg, a senior underwriter employed by CIC, regarding a letter he claimed to have sent to Lakeside Mortgage, stating that he told "them" (i.e., Lakeside personnel) to have "Gremm request a release of indemnity from you."

10. Plaintiff Jody L. Forney entered into a transaction with Lakeside on or about February 27, 2003. Forney filed her original Erie County Court of Common Pleas Complaint against Lakeside on or about March 26, 2007.

11. On April 8, 2011, Gary W. Horst, senior bond claims specialist with Capitol Insurance Companies, sent a letter to Lakeside, attention to John M. Gremm, advising Mr. Gremm that on or about March 23, 2011 CIC had been served with a Complaint styled Jody Forney v. Capitol Indemnity Corporation. In the April 8, 2011, letter Horst advised Gremm, among other matters, that the indemnification agreement continued to be in force as to him, as

10

well as others who had executed the indemnity agreement.

12. On July 8, 2011 John Gremm sent an e-mail to attorney Joane Pettinelli, forwarding an April 8, 2011 email from Gary Horst to John Gremm, which forwarded email stated, "This will confirm our telephone conversation today in which we discussed that you were removed as an indemnitor regarding Lakeside Mortgage, Inc., since you sold your interest to Mr. Brinkman and Mr. DiPaolo. Thus, please disregard the tender letter that was sent to you today via certified mail.

13. The September 28, 2011, Affidavit of Gregory S. King, states, in pertinent part, at paragraph 7, that on or before June 10, 2006, King directed an email to Thomas Novak, the office manager of Lakeside, acknowledging the recent change in Lakeside's ownership and advising that to be released form their indemnity obligations under the GIA Mr. Gremm was required to seek release directly from CIC.

14. The September 28, 2011 Affidavit of King also states, in pertinent part, at paragraph 8, that the June 10, 2006 email to Nowak was summarized in another June 10, 2006 email to Dalia Dannenberg, a senior underwriter employed by CIC.

15. The September 28, 2011 Affidavit of King also states, in pertinent part, at paragraph 9, that King reviewed his records and determined that neither Mr. Gremm nor Mrs. Gremm ever requested a release, through King, of their indemnification obligations to CIC under the GIA.

16. The September 28, 2011 Affidavit of King also states, in pertinent part, at paragraph 10, that King reviewed his records and determined that neither King insurance nor Capitol advised either Mr. Gremm or Mrs. Gremm that CIC had released them from their indemnity obligations to CIC.

17. The September 29, 2011 Affidavit of Gary W. Horst states, in pertinent part, at paragraphs 5 and 6, that Horst reviewed CIC's records and determined that neither Mr. Gremm or Mrs. Gremm ever requested that CIC release them from their indemnity obligations to CIC under the GIA.

18. The September 29, 2011 Affidavit of Horst also states, in pertinent part, at paragraphs 7 and 8, that during an April 8, 2011

>  telephone conversation with Mr. Gremm and in an April 8, 2011 email to Mr. Gremm, he (Horst) mistakenly concluded and informed Mr. Gremm that Gremm had been released from his indemnity obligations to CIC.
>
> 19.  No evidence that the sale of Gremm's ownership interest in Lakeside was finalized is in the record.  The record only contains evidence that Gremm indicated his intention to sell his ownership interest in Lakeside.
>
> 20.  There is no evidence that either Mr. Gremm or Mrs. Gremm, individually or together, specifically requested that their indemnification obligation to CIC, as set forth in the GIA, be terminated.
>
> 21.  The GIA does not specify conditions or procedures by which a signatory to the Lakeside/CIC indemnification agreement could be released from said agreement.

The question for this Court is whether, construing the facts as alleged in a light most favorable to the non-moving party, i.e. CIC, it is reasonably certain that a reasonable trier of fact could view said facts, listed above, as establishing that John Gremm and Melissa Gremm were not indemnitors of CIC at a time when CIC sustained a loss or anticipated it could sustain a loss arising from the mortgage arrangement between Forney and Lakeside.  Conversely, the question is whether it is reasonably certain that no such reasonable trier of fact would view said facts and conclude that John Gremm and Melissa Gremm were indemnitors to CIC at the time of the loss, or anticipated loss, referred to previously.

The Gremms' arguments notwithstanding, there are several genuine issues of material fact that do not appear to be readily disposed of in a way that leads ineluctably, or at least with a comfortable degree of certainty, to the result sought by movants in this case.

Such genuine issues of material fact (and issues of law) include, but are not necessarily limited to, the following:

    A.  As the record contains no specific documentation memorializing John Gremm's sale of his interest in Lakeside, did Gremm finalize the sale of his interest in Lakeside on or about November, 1 2005, and. therefore, complete the termination of his ownership interest in Lakeside on that date?

    B.  Assuming that John Gremm did finalize the sale of his interest in Lakeside, did the termination of his ownership interest in Lakeside necessarily entail a termination of or release from his obligation to indemnify CIC?

    C.  Even if John Gremm was released from his obligation to indemnify CIC as a result having terminated his ownership interest in Lakeside, would that occurrence have necessarily entailed that Melissa Gremm's obligation to indemnify CIC had been ended as a direct result of the change in the status of her husband's relationship with Lakeside and CIC?

    D.  At what point in time did CIC sustain a loss or anticipate that it would sustain a loss arising out of the mortgage arrangement between Forney and Lakeside?

    E.  Did a CIC agent or representative communicate, directly or indirectly, to John Gremm and/or Melissa Gremm, regarding the method by which they could be released from their obligation to indemnify CIC?

    F.  For a release of an existing indemnity obligation with CIC to be effective, is it necessary for the indemnity obligors to communicate their intention to terminate said indemnification obligation expressly and directly to CIC?

    Accordingly, this Court finds that there are various, genuine issues of material fact(as well as issues of law), relevant to the question of whether John Gremm and/or Melissa Gremm effectively terminated and/or were released from their indemnification obligation to CIC prior to the time that CIC sustained or anticipated that it would sustain a loss arising out of the mortgage arrangement between Forney and Lakeside, which release would then void any claim CIC might have to be indemnified for any such loss it might sustain arising out of the Forney/Lakeside

transaction.

### VI. Conclusion.

For these reasons, the undersigned DENIES the Motion for Summary Judgement of Third-Party Defendants John and Melissa Gremm.

IT IS SO ORDERED.

                                                                            s/ VERNELIS K. ARMSTRONG
Vernelis K. Armstrong
United States Magistrate Judge

Date: February 22, 2012